IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERRANCE J. SHAW,

Plaintiff,

v.

OPINION AND ORDER

12-cv-497-wmc

GARY HAMBLIN, EDWARD WALL, STEVE WEIRINGA, MATHEW JONES, DEBBY LOKER, SERGEANT BUTKIEWICZ, JIM MESSING, and KIMBERLY METZEN,

Defendants.

---

Pursuant 42 U.S.C. § 1983, plaintiff Terrance Shaw has filed suit against the secretary of the Wisconsin Department of Corrections and various officials at the Oshkosh Correctional Facility for deprivation of his First and Fourteenth Amendment rights in violation of the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973. As a state prison inmate, Shaw alleges more specifically that he was denied equal access to the prison canteen because of his disability, and that various prison guards and staff mistreated him and filed false accusations against him in retaliation for his internal prisoner complaints. He separately alleges that he has been repeatedly denied the right to send donations to political campaigns because his unit supervisor believes that inmates are not allowed to participate in politics.

Because Shaw is a prisoner seeking redress from employees of a governmental entity, the Prison Litigation Reform Act requires this court to determine whether his proposed action (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks money damages from a defendant who is immune from such

relief. 28 U.S.C. § 1915A(b). After examining the complaint, the court concludes that Shaw may proceed on his Rehabilitation Act and First Amendment claims against certain of the named defendants.

## PRELIMINARY MATTERS

The court first addresses plaintiff's motion to supplement his complaint with additional allegations (dkt. #4). That motion will be granted and the factual allegations contained in Shaw's supplemental complaint have been incorporated into the court's screening.

In addressing any pro se litigant's complaint, the court must read the allegations generously, and hold the complaint "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 521 (1972).[1] Shaw alleges, and the court assumes for purposes of this screening order, the following facts.

## ALLEGATIONS OF FACT

### A. Parties

Plaintiff Terrance Shaw is presently confined at the Oshkosh Correctional Institution ("OSCI"). At the time of the incidents in question, defendant Gary Hamblin

[1] The court draws all facts from plaintiff's complaint and attachments to his complaint. *Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004) ("Attachments to the complaint become part of the complaint and the court may consider those documents in ruling on a motion to dismiss.").

was the Secretary of the Wisconsin Department of Corrections.[2] Defendant Steve Weiringa was the Deputy Warden, defendants Matthew Jones and Debby Loker were unit directors, defendant Sergeant Butkiewicz was a correctional officer, defendant Jim Messing was a unit social worker, and defendant Kimberly Metzen was a librarian, all also at OSCI.

**B. Disability Discrimination**

Shaw has disabilities that substantially limit several major life activities, including his ability to work. He has a heart condition that limits his ability to walk and arthritis that limits his ability to write and grasp objects. Additionally, he has posttraumatic stress disorder that is severely limiting in unspecified ways. While Shaw cannot work, he would like to do so.

At OSCI, there is a two-tiered system of access to the prison canteen. Prisoners who work or who are in educational programs may access the canteen first, and prisoners with disabilities and those who refuse to work go second. By the time the second group arrives at the canteen, many items have sold out. As a result of his disability, Shaw is frequently unable to purchase basic items such as laundry soap and toilet paper because they are out of stock when his group reaches the canteen.

---

[2] The court takes judicial notice of the fact that Gary Hamblin is no longer secretary of the Wisconsin Department of Corrections. For injunctive and declaratory relief purposes, the court adds as a defendant the current secretary, Edward Wall. *Laborers' Pension Fund v. Blackmore Sewer Construction, Inc.*, 298 F.3d 600, 608 (7th Cir. 2002) (courts may take judicial notice of "information readily available in the public domain").

**C. Initial Complaint about Disability and Subsequent Retaliation**

Prior to December 13, 2010, Shaw informed Unit Manager Jones, Social Worker Messing, and Sergeant Butkiewicz that he was being discriminated against on the basis of his disability, but they dismissed his complaints out of hand. Shaw then contacted an organization named Disability Rights Wisconsin ("DRW") for assistance. On December 13, 2010, DRW attorney Michele Hughes sent a letter to Unit Director Jones informing him that if Shaw was being denied access to the prison canteen because of his disability, that would be a violation of the ADA.

On January 13, 2011, Shaw requested use of a stapler from Sergeant Butkiewicz. Although on all previous occasions Shaw had been granted access to the stapler without comment, Butkiewicz stated, "You better not talk to [me] or you'll get a ticket for soliciting staff." Butkiewicz then made disparaging remarks about Shaw's religious beliefs. Aggrieved by this treatment, Shaw filed inmate complaint #OSCI-2011-1096.

On February 23, 2011, Shaw requested approval from unit Social Worker Messing to make a free 1-800 phone call to contact the Wisconsin State Bar Association for purposes of obtaining legal assistance for his ADA claim. Previously, Messing had allowed Shaw and other inmates to use the phone, but on this occasion he refused. Shaw alleges that Messing's purpose in denying him access to a phone was to retaliate against Shaw for his earlier disability complaints. Shaw then lodged inmate complaint #OSCI-2011-4022 against Messing.

**D. Continuing Complaints**

In the spring of 2011, following up on her earlier letter to the prison, DRW attorney Hughes spoke to Deputy Warden Weiringa. Weiringa advised Hughes that Shaw was not in fact disabled, and the reason he had to go to the canteen last was because he chose not to have a work assignment.

On April 8, Shaw lodged inmate complaint #OSCI-2011-7150 because Deputy Weiringa for lying to attorney Michele Hughes about his disability status. On May 27, 2011, Shaw lodged another inmate complaint, #OSCI-2011-10477, regarding the discrimination against him on the basis of his disability. On June 2, 2011, Shaw lodged yet another complaint, #OSCI-2011-11090, protesting that Deputy Weiringa was continuing to lie to DRW attorney Michele Hughes about his disability status.

**E. Denial of Right to Donate to a Political Campaign**

On April 12, 2011, Shaw submitted a disbursement request to W-Building unit director Matthew Jones asking permission to deduct $10.00 from his personal prison account for a donation to the Democratic National Committee. On April 18, 2011, Jones denied the disbursement request, stating that because Jones is statutorily barred from voting, he is also barred from participating in any way in an election. Shaw alleges that Jones denied the complaint, in part to retaliate against him from complaining about lack of canteen access. Shaw then lodged inmate complaint #OSCI-2011-7629. This complaint was denied, and Shaw appealed.

On October 13, 2011, a corrections complaint examiner at the Wisconsin Department of Corrections considered Shaw's appeal, reversed Jones' decision, and

recommended that Shaw re-submit his request. Shaw did, but Jones again denied the disbursement request, stating in pertinent part that: "Inmates incarcerated are statutorily banned from voting. [D]onations to a political party are viewed as an attempt to participate in a process [you] are statutorily prohibited from." Despite this explanation, Shaw alleges that Jones' "true motivations" were to retaliate for his earlier complaint about disability discrimination.

On November 28, 2011, Shaw lodged inmate complaint #OSCI-2011-23876 regarding Jones' denial of the re-submitted disbursement request. The corrections complaint examiner again reversed Jones and recommended that Shaw submit his disbursement request for a third time.

On May 11, 2012, Shaw resubmitted his disbursement request. On May 14, 2012, the request was denied, this time by Debby Loker, who had succeeded Jones as the W-Building unit director. Even though Loker is alleged to have known that all of Jones's previous denials on this issue had been reversed by corrections complaint examiners, she denied the request anyway. On May 15, 2012, Shaw lodged inmate complaint #OSCI-2012-10231, alleging that Loker had violated his First Amendment right to free speech, and that her decision was made in retaliation for his previous complaints on the same issue. On May 19, 2012, Shaw lodged inmate complaint #OSCI-2012-11441, alleging that former unit manager Jones had also violated his First Amendment rights and had retaliated against him. Shaw requested that Jones have no involvement in any subsequent decisions about how Shaw could spend his money.

**F. Complaints About and Retaliation by Kimberly Metzen**

At some point, Shaw filed complaints against prison librarian Kimberly Metzen. Thereafter, Metzen is alleged to have harassed Shaw by refusing him access to the library under the pretext that he had arrived a few minutes earlier than the prison schedule permitted. Over the previous five years, Shaw had never been told that he was signing out of his unit too early or arriving at the law library too soon. On May 24, 2011, Shaw lodged inmate complaint #OSCI-2011-10284, requesting clarification regarding the correct sign-out and sign-in time under the prison rules and regulations, because he believed that he was arriving at the library at the proper time.

On January 8, 2012, Shaw arrived at the law library at 1:38 p.m. Metzen concluded that Shaw had signed out of his unit three minutes too early, and ordered him back to his unit. Shaw alleges that he "complied."

On January 9, 2012, Metzen wrote Shaw up in disciplinary report #2176219 for disobeying orders, disruptive conduct, and violation of institution policies and procedures.[3] While the charge of disobeying orders was dismissed, Shaw was adjudged guilty of all other counts and punished with seven days' loss of law library privileges. Shaw alleges that Metzen wrote the report to retaliate against him for filing prior complaints against her.

On January 13, 2012, Metzen refused to photocopy documents for Shaw. Shaw then lodged inmate complaint #OSCI-2012-1272, which was affirmed, and Metzen was

[3] On January 9, 2012, Shaw also lodged inmate complaint #OSCI-2012-879, against Metzen for misinterpreting prison rules and policies. On January 19, 2012, his complaint was dismissed.

directed to provide the copies. On April 9, 2012, Shaw submitted a copy of some legal materials for Metzen to copy. Instead of copying them, she confiscated them. Shaw lodged inmate complaint #OSCI-2012-7527. On April 10, 2012, Shaw submitted several additional confidential legal papers to Metzen for copying. Metzen and another librarian proceeded to ignore the "confidential" label and read the documents. Shaw lodged inmate complaint #OSCI-2012-7645.

On August 28, 2012, Shaw submitted the original copy of his complaint in this lawsuit to Metzen for photocopying. Metzen made the copies, but did not return the original to Shaw. When Shaw discovered this, he contacted Metzen through his unit sergeant. Metzen told Shaw to pick up the original from the library the next day.

On August 29, 2012, Shaw returned to the library and spoke to Kimberly Metzen's co-worker, "Ms. Chaney," who was then on duty. Chaney was unable to find the original version of Shaw's legal complaint in the work area, where temporarily unclaimed inmate photocopies are generally filed in an alphabetical tab system. Chaney then searched Metzen's desk, where she did not find the original version Shaw was looking for, but did find copies of other legal documents Shaw had submitted for photocopying, including some of the complaints referenced above. At no time had Shaw ever given Metzen permission to read or retain copies of his confidential legal documents.

Because the original complaint Shaw was searching for could not be found anywhere in the library, Shaw believes that Metzen left the prison with the original and never brought it back. Shaw lodged inmate complaint #OSCI-2012-18184 regarding the seizure of his documents, which was dismissed when Metzen falsely testified that she had

returned all of Shaw's confidential legal documents to him.

OPINION

## I. ADA and Rehabilitation Act Claims

Title II of the Americans with Disabilities Act (ADA) provides that qualified individuals with disabilities may not "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity." 42 U.S.C. § 12132. This provision of the ADA applies to state prisons. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206-09 (1998). To the extent that Shaw seeks declaratory and injunctive relief under the ADA, his suit against Secretary Edward Wall in his official capacity is proper. *Radaszewski ex rel. Radaszewski v. Maram,* 383 F.3d 599, 606 (7th Cir. 2004) (*Ex Parte Young* doctrine applies to ADA claims).

To the extent Shaw also seeks compensatory relief, however, that claim may be barred by Wisconsin's sovereign immunity. Where a violation of the ADA is also a violation of a constitutional right incorporated against the states via the Fourteenth Amendment, or where the provision of the ADA at issue is otherwise within the scope of valid legislation covered by § 5 of that Amendment, a claim for monetary damages may proceed in federal court, and state sovereign immunity is deemed abrogated by the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 159; *Toeller v. Wis. Dep't of Corr.*, 461 F.3d 871, 874 (7th Cir. 2006). Since Shaw does not allege, and this court does not independently find, that the restrictions on Shaw's canteen access amount to an actual violation of his incorporated constitutional rights, the question becomes whether § 5 of the Fourteenth Amendment applies anyway.

The analysis required to answer this question is fairly involved. Indeed, the Supreme Court itself is split as to the reach of § 5. *United States v. Georgia*, 546 U.S. at 158-59; *Tennessee v. Lane*, 541 U.S. 509, 538-39 (2004) (Rehnquist, J., dissenting). Moreover, in the face of the requirement to conduct a detailed § 5 analysis of ADA Title II claims, the Court of Appeals for the Seventh Circuit has at least twice declined to resolve the issue, opting to dismiss claims under the ADA in favor of parallel claims under the Rehabilitation Act, 29 U.S.C. § 701 *et seq*., which is not subject to the bar of state sovereign immunity because a waiver of immunity is tied to the receipt of federal funds. *Jaros v. Ill. Dep't. of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012); *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012). Substitution of Rehabilitation Act claims for ADA claims does not prejudice the plaintiff because the "relief available . . . under these [two] provisions is coextensive." *Jaros*, 684 F.3d at 672. Thus, even where a pro se prisoner has not explicitly invoked the Rehabilitation Act, the Court of Appeals has *sua sponte* inferred a claim under that statute so as to avoid the thorny sovereign immunity question posed by the ADA. *Norfleet*, 684 F.3d at 690.

Consistent with the above-cited cases, this court will dismiss Shaw's claims under the ADA, instead interpreting them in light of the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A claim under § 504 of the Act has four elements: (1) an individual with a disability; (2) who was otherwise qualified to participate; (3) but

who was denied access solely by reason of disability; (4) in a program or activity receiving federal financial assistance. *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997).

Shaw has alleged all the essential elements of a Rehabilitation Act claim. First, his complaint states that his heart condition, arthritis, and posttraumatic stress disorder are all physical or mental impairments that substantially limit one or more major life activities, including working. (Letter from Disability Rights Wisconsin, dkt. #1-1.) Thus, he is "disabled" under the Act. 29 U.S.C. § 705(9)(B); 42 U.S.C. § 12102(1)(A) ("major life activities include, but are not limited to . . . working"). Shaw also alleges that he is eligible to attend canteen at the same time as most other inmates but cannot, solely because his impairments render him unable to work or participate in a prison-offered jobs and educational programs. According to Shaw, any prisoner who is unable to participate in such programs by virtue of disability will automatically be forced to attend canteen last, often when essential items have sold out. He has thus been effectively denied a program or activity that he would otherwise qualify for. See *Jaros v. Ill. Dep't. of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (meals and showers made available to inmates are a "program or activity") (internal citation omitted). Finally, although Shaw does not allege it, the court takes judicial notice of the fact that the Wisconsin Department of Corrections receives federal financial assistance and is thus subject to the terms of the Rehabilitation Act. *See Flynn v. Doyle*, 672 F.Supp.2d 858, 878 n.2 (E.D. Wis. 2009) ("It is undisputed that DOC receives and uses federal funds in its state prison facilities."). Having alleged a viable Rehabilitation Act claim, the court will allow Shaw

to proceed against defendants Wall and Jones in their official capacity for purposes of injunctive, declaratory and compensatory relief.

**II. First Amendment Political Speech Claim**

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). However, "inmates clearly retain protections afforded by the First Amendment," *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987), including a limited right to free speech. Typically, any burden on an inmate's First Amendment rights must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). With respect to restrictions on inmates' outgoing correspondence, an even stricter standard applies: the restriction must be "necessary or essential" to protect "important or substantial" prison interests. *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. 401 (1989).

The restrictions imposed on Shaw's outgoing correspondence (his attempted donation) appear to fail this test, because there is no conceivable prison interest in restricting valid political activity outside prison walls. While the Constitution permits states to disenfranchise convicted felons, *Richardson v. Ramirez*, 418 U.S. 24, 55-56 (1974), this does not necessarily mean that prisoners can be prohibited from any and all participation in politics. Here, Shaw alleges that M-Block unit directors Jones and Loker repeatedly denied his requests for disbursement of $10.00 to the Democratic National

Committee.[4] Accordingly, he has alleged a viable cause of action for deprivation of his First Amendment rights by these two defendants under 42 U.S.C. § 1983.

## III. First Amendment Retaliation Claim

"An act in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987). To state a First Amendment retaliation claim, Shaw must allege that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was a causal factor in the defendants' decision to take the retaliatory action. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008).

### A. Defendants Jones, Messing and Butkiewicz

Shaw alleges that at some point prior to December 13, 2010, (1) he complained to Unit Manager Jones, Social Worker Messing and Sergeant Butkiewicz about the discrimination against him, and (2) he arranged for an attorney from Disability Rights Wisconsin to contact prison officials on his behalf. Then, in January of 2011, Sergeant Butkiewicz allegedly refused to grant Shaw access to a prison stapler, despite granting access in the past. Butkiewicz is also alleged to have made disparaging remarks about

[4] More troubling still – not as a constitutional matter *per se*, but rather as a failure of authority and discipline in the Wisconsin Department of Corrections – Shaw alleges that these two unit directors were free to persist in their denial of permission, despite contrary advice from the Department's legal counsel *and* consecutive overrulings by examiners in the Department's complaint system.

Shaw's religious beliefs. In February of 2011, Messing allegedly refused to allow Shaw to make a 1-800 call to the Wisconsin Bar Association. In April and October, 2011, Jones allegedly denied Shaw the right to donate to the Democratic National Committee. Shaw asserts -- each time without suggesting any basis other than somewhat attenuated timing -- that all three of these defendants acted with retaliatory motives. At least at the pleading stage, where the standard is bare plausibility, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009), this still suffices to establish the element of causation.

To support a retaliation claim, however, adverse action must be sufficient to deter or chill a person of "ordinary firmness" in the exercise of constitutional rights. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). The court finds that denial of a legal phone call and denial of requests for disbursement of prisoner funds would deter a prisoner of ordinary firmness from exercising his or her First Amendment rights in the future, but that, Sergeant Butkiewicz's behavior, which was at most rude, does not rise to this level. The court will, therefore, allow Shaw to proceed on his retaliation claims against defendants Messing and Jones, but not against Sergeant Butkiewicz.

**B. Defendant Loker**

In April and October, 2011, after Unit Director Matthew Jones refused to grant Shaw permission to release personal funds for a donation to the Democratic National Committee, Shaw also allegedly filed formal inmate complaints seeking to overturn the decisions. He further claims that despite receiving favorable rulings on both complaints, Jones refused to change his mind. On May 11, 2012, Shaw allegedly submitted his *third* successive request for disbursement of funds for a political purpose. At that point, the

decision was in the hands of a new unit director for the W Building, Debby Loker, who had taken over for Jones. Shaw alleges that Loker knew about the outcome of his two previous complaints, but deliberately refused to grant him permission and did so simply to retaliate for his earlier complaints. At this early stage, the court accepts Shaw's pleadings as true, though just barely meeting the plausibility threshhold. Accordingly, it will allow him to proceed on his retaliation claim against defendant Loker as well.

**C. Defendant Metzen**

In the spring of 2011, Shaw and prison librarian Kimberly Metzen allegedly began to quarrel over whether Shaw was arriving at the prison library ahead of schedule. Shaw claims that he was unreasonably forced to file an inmate complaint against Metzen requesting official clarification regarding seemingly frivolous violations of timing and sign-in policies for the library. On January 9, 2012, Shaw and Metzen allegedly had another disagreement that led to Metzen writing Shaw up in a disciplinary report. One of the charges, that Shaw had disobeyed orders, was dismissed, but he was convicted on the rest. Thereafter, Metzen allegedly refused to photocopy documents for Shaw, and on multiple occasions she allegedly read and even confiscated his confidential legal papers. Shaw alleges that Metzen did all of this in order to retaliate against him.

Metzen's allegedly exaggerated or false disciplinary report, and her confiscation of Shaw's legal materials, may be deprivations likely to deter future First Amendment activity. See *Black v. Lane*, 22 F.3d 1395, 1402-03 (7th Cir. 1994) (false disciplinary report); *Thomas v. Evans*, 880 F.2d 1235, 1241-42 (11th Cir. 1989) (confiscation of materials). At this early stage, Shaw's allegation that Metzen acted in retaliation for his

complaints -- protected First Amendment activity -- is also plausible. Accordingly, Shaw may proceed against defendant Metzen on a retaliation claim.

**IV. Constitutional Claims Surrounding the Seizure of Shaw's Original Complaint**

Shaw asserts that by refusing to return the original version of his civil rights complaint, Kimberly Metzen unconstitutionally seized his property in violation of the Fourth Amendment. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

Unfortunately for Shaw, the privacy expectations enjoyed by prisoners under the Fourth Amendment are quite minimal. Prison guards may search through inmates' personal property, including their legal materials. See *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996) (finding search of legal papers without inmate present constitutional even when it violates a prison regulation). In addition, prison guards may also seize and keep prisoner property without violating the Fourth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984) ("[R]espondent does not have a reasonable expectation of privacy enabling him to invoke the protections of the Fourth Amendment . . . to redress the alleged destruction of his personal property."). While Shaw may, therefore, proceed against Metzen under the First Amendment, it is not at all clear a claim exists under the Fourth Amendment.

Shaw also alleges that Metzen's decision to confiscate his original complaint violates the substantive component of the Fourteenth Amendment's Due Process Clause

because it is an arbitrary and abusive exercise of governmental power that "shocks the conscience." The analysis for a substantive due process violation by an executive actor proceeds in four steps. *Christensen v. County of Boone, IL*, 483 F.3d 454, 462 (7th Cir. 2007). First, the court must "provide a 'careful description' of the interest said to have been violated." *Id.* Second, it "must determine whether that interest is 'fundamental'—that is, whether it is so deeply rooted and sacrosanct that no amount of process would justify its deprivation." *Id.* Third, it must "determine whether the government has interfered 'directly' and 'substantially' with the plaintiffs' exercise of that right." *Id.* Finally, "if a fundamental right has been impaired, [the court asks] whether the governmental action can find 'reasonable justification in the service of a legitimate governmental objective,' or if instead it more properly is 'characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id.*

Starting at the first step, the court notes that there is no hint in Shaw's complaint as to the nature of the right *he* believes is at stake. (Shaw says that he was deprived of the right to be free from "unlawful arbitrary government action" but this tautological statement is unhelpful.) Shaw has not been deprived of his right to access the courts.[5] Other than this, there seems to be no other plausible liberty interest involved. There is,

---

[5] Although Shaw does not invoke the Sixth Amendment right of access to the courts, this portion of the Constitution would appear to provide no independent relief. The right of access to court is violated when a prisoner is deprived of access and suffers actual injury as a result. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). To state a claim, a prisoner's complaint must "spell out . . . [a] connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). The complaint in this case alleges neither, nor does Shaw appear to have suffered any prejudice.

of course, a property interest involved, since Shaw no longer possesses the original hardcopy version of his complaint (although he acknowledging having copies). No modern Supreme Court decision has recognized property rights as "fundamental rights" for substantive due process purposes, and this case does not present a good candidate to deviate from that trend. Moreover, even assuming a fundamental right, the conduct alleged here (refusal to return Shaw's original complaint), while petty, even arbitrary and capricious, is not "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 848 n. 8 (1998). Accordingly, the court finds that Shaw does not adequately allege a substantive due process claim.

ORDER

IT IS ORDERED that:

(1) Plaintiff Terrance Shaw's motion to supplement his complaint (dkt. #4) is GRANTED.

(2) Plaintiff's motion for leave to proceed is GRANTED with respect to his:

a. Rehabilitation Act claims against defendants Wall and Jones in their official capacity for damages and injunctive relief;
b. First Amendment political speech claim against defendants Jones and Loker in their personal capacity for damages, and against Loker in her official capacity for injunctive relief; and his
c. First Amendment retaliation claim against defendants Messing, Jones, Loker and Metzen in their personal capacities for damages.

(3) Plaintiff's motion for leave to proceed is DENIED in all other respects.

(4) Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on the defendants. Under the agreement, the Department of Justice will have 40 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiff's complaint if it accepts service for defendant.

(5) For the time being, plaintiff must send defendants a copy of every paper or document he files with the court. Once plaintiff has learned what lawyer will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard any documents submitted by plaintiff unless plaintiff shows on the court's copy that he has sent a copy to defendants or to defendants' attorney.

(6) Plaintiff should keep a copy of all documents for his own files. If plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

Entered this 16th day of October, 2013.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge